Dear Mayor Patterson:
This office is in receipt of your request for an opinion of the Attorney General relative to various procedures pertaining to the Village government. Your questions are as follows:
 1. Can a councilman who has moved to California without giving notice of leaving or resigning receive back pay and remain on the group insurance policy;
 2. Can the council receive a raise during the term they are serving, and if they give themselves a raise, can they then reduce their salary in the same term;
 3. Can the elected Chief of Police live outside the jurisdiction and be employed as a security guard in another jurisdiction from 10:00 p.m. to 7:00 a.m. thereby leaving the Village with inadequate police service for the public and supervision of the department.
4. Can the police be restricted to 40 hours.
In regard to your first question, under R.S. 18:581 a vacancy occurs in an elective office when the person no longer meets the residence or domicile requirements of that office. You have indicated that the councilman in question has moved to California but we have been informed that he has retained a home in South Mansfield and occasionally returned to council meetings during the last sixteen months.
In Atty. Gen. Op. No. 92-350 this office noted that when a local official moves from the district from which he is elected, the local governing authority may declare the office vacant. However, it was pointed out that the term "residence" and domicile" are not synonymous, and the fact that a residence is maintained for political purposes does not prevent it from being actual and bona fide. There must be actual, physical use or occupation of quarters for living purposes.
As advised in that opinion, a determination must be made by the Board of Aldermen that the alderman in question no longer meets the statutory residency requirements. If that is determined, the move does not automatically render the position vacant, but must so be declared by the council. In accordance with R.S. 18:602(A) when the vacancy is declared the governing authority must appoint a qualified person to fill the vacancy. If the unexpired term exceeds one year, the governing authority within ten days of the declared vacancy must call a special elections.
Until there is a declared vacancy or removal, we must conclude that the councilman would be entitled to pay as any other councilman.
In answer to your question whether the council can receive a pay increase during the term they are serving, we must conclude they cannot. R.S. 33:404.1 provides the board of aldermen shall by ordinance have the authority to increase or decrease the compensation of elected officials except as otherwise provided by R.S. 33:405(G). R.S. 33:405(G) provides the aldermen may increase their compensation from time to time "but any increase in compensation shall not become effective during the term of office in which the increase is approved, and no increase in compensation made within the last six months of the term of office for aldermen shall be effective for the next succeeding term."
Inasmuch as the increase during the term was prohibited they not only can reduce their salary in the same term, they must reduce the amount to that received before the attempted increase.
You state that the elected Chief of Police lives twenty miles from the Village of South Mansfield, and ask if he can legally serve living that far away and not "in the jurisdiction". We have been informed that he had moved outside of jurisdiction prior to election, but also prior to Act 262 of 1979.
This office has written numerous opinions that the elected chief of police must reside within the limits of the municipality, and if he moves outside of the municipality the local governing authority should declare his office vacant. Atty. Gen. Op. Nos. 92-324, 84-919, 83-215, 81-1341. In Atty. Gen. Op. No. 83-213 it was observed the governing body has the authority to declare the office of chief of police vacant when he no longer resides within the municipality, and if the local governing authority refuses to act, the district attorney may bring an action challenging the right of the chief of police to hold office.
However, while R.S. 33:385.1 requires the chief of police be a qualified elector of the municipality, we have been informed that the Chief of Police has been in office since prior to the enactment of this statute by Act 262 of 1979. That Act provides the provisions would not prohibit an elected chief of police of any municipality from continuing to hold his elective office or "from seeking continuous, uninterrupted reelection to that office." We understand this to be the situation of the Chief of Police in question, and with uninterrupted reelection he can live outside the jurisdiction.
You question if the Chief of Police can be employed as a security guard from 10:00 p.m. until 7:00 a.m., stating it leaves the village with inadequate police service.
We find nothing which would prohibit such employment and would presume other police officers would be on duty during those hours.
In regard to your question whether police officers can be restricted to 40 hours a week, we find nothing that restricts their hours, but recognize that Law enforcement and fire protection employees are governed by 29 U.S.C. § 207(K) which provides as follows:
 No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correction institutions) if —
 (1) in a work period of 28 consecutive days the employee receives four tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendment of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in the calendar year 1975; * * * compensation at a rate not less than one and one-half times the regular rate at which he is employed.
Lamon v. City of Shawnee, Kan., 972 F.2d 1145 (10th Cir. 1992) recognized that the Secretary of Labor, pursuant to29 C.F.R. § 553.201, has established 171 hours is the maximum number of hours a law enforcement officer may work in a work period of 28 days before the officer must be paid an overtime wage. See also, Spires v. Benn Hill County, 745 F. Supp. 690 (M.D. Ga. 1990).
However, 29 U.S.C. § 207(o) in the Fair Labor Standards Act is directed to compensatory time and allows employees of a political subdivision of a state to receive in lieu of overtime compensation, compensatory time off at a rate of not less than one and one-half for each hour of employment for which overtime compensation is required by the section. However, if not covered by a collective bargaining agreement, the public agency may provide for compensatory time only by an agreement arrived at between the employer and employee before the performance of the work.
Thus, if these officers qualify for overtime will depend upon the amount of time they worked over 171 hours in the 28 day period. Whether they must receive cash payment or compensatory time will depend upon whether an agreement existed before the overtime was performed.
We hope this sufficiently answers your inquiries.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General
BBR/0342f